UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DONNA JEAN ZIRBEL,

               Plaintiff,

vs

FORD MOTOR COMPANY, as Sponsor and
Plan Administrator for the FORD MOTOR
COMPANY GENERAL RETIREMENT
PLAN,

               Defendant.

Case No.

Hon.

_____ /

Wood Kull Herschfus Obee & Kull PC
KATHERINE WAINRIGHT SHENSKY (P33391)
Attorneys for Plaintiff
37000 Grand River Avenue, Suite 290
Farmington Hills, Michigan 48335-2881
(248) 476-2000
kws@woodkull.com

_____ /

## COMPLAINT FOR DECLARATORY AND EQUITABLE RELIEF

NOW COMES the Plaintiff, DONNA JEAN ZIRBEL, by and through her
attorney, Katherine Wainright Shensky, and for her Complaint against FORD
MOTOR COMPANY, states as follows:

## COMMON ALLEGATIONS

1.     Plaintiff DONNA JEAN ZIRBEL, hereinafter "ZIRBEL", is, and was,
at all times material hereto, a resident of the City of Yarmouth Port, and a citizen

of the Commonwealth of Massachusetts.

2.      Defendant FORD MOTOR COMPANY, hereinafter "FORD", is, and was, at all times material hereto, a corporation operating, inter alia, within the state of Michigan, with its principal corporate offices in the City of Dearborn, Wayne County, Michigan.

3.      Defendant FORD MOTOR COMPANY (hereinafter "FORD") is also the sponsoring employer and the Plan Administrator of the Ford Motor Company General Retirement Plan, hereinafter "the Plan", a Qualified Employees Retirement Plan pursuant to Section 401 of the Internal Revenue Code of 1954, as amended. (See Article XVIII of Plan).  A copy of the Plan as recently provided to counsel is attached hereto, marked **Exhibit "A"**.

4.      This action arises under 28 U.S.C. § 2201, authorizing declaratory relief in a case of actual controversy within the Court's jurisdiction, and under the Employees Retirement Income Security Act of 1974, 29 U.S.C. § 1001, et seq., and more specifically, pursuant to 29 U.S.C. § 1132(A)(1)(B).  This Court has jurisdiction pursuant to 29 U.S.C. § 1132(E)(1).

5.      Plaintiff is the former spouse of a former employee of FORD, Carl G. Zirbel, who was employed by FORD as a salaried employee at the Ford facility in the City of Dearborn, State of Michigan.

2

6. During his 34.1 years of credited service with FORD, Carl G. Zirbel was a participant in the Plan; during that period of time, Plaintiff ZIRBEL was his designated beneficiary.

7. The provisions of the Plan, specifically Article XIII, Section 2, empowered its duly appointed Representatives with discretionary authority to administer the benefit structure of the plan, to construe and interpret the plan, and to correct any defect, supply any omission, or reconcile any inconsistency as necessary to carry out the purpose of the Plan.

8. Plaintiff ZIRBEL and Carl G. Zirbel were divorced in the Wayne County Circuit Court by virtue of a Judgment of Divorce entered by that Court on January 13, 2009 (**Exhibit "B"**).

9. The Judgment of Divorce provided, inter alia, that Plaintiff ZIRBEL, as Alternate Payee, was to be awarded 50% of the marital portion of Carl G. Zirbel's benefits under the Plan, and directed the preparation of a Qualified Domestic Relations Order in order to effectuate the segregation and payment of benefits to Plaintiff ZIRBEL under the terms of the Judgment. A copy of the Qualified Domestic Relations Order, hereinafter "QDRO",  entered with the Wayne County Circuit Court on February 6, 2009, is attached hereto, marked **Exhibit "C"**.

10.    The QDRO, like the Judgment of Divorce, directed the Plan Administer to calculate for the benefit of Plaintiff ZIRBEL the monetary benefit she was to receive; the provisions of the Plan required the Plan Administrator to provide to her reasonable notice of whatever options were available to her under the terms of the Plan for payment of said benefits.

11.    Under the terms of the Plan, the Alternate Payee was entitled to begin to draw benefits once the Participant reached his earliest retirement date. Because the Participant had already chosen to retire, Plaintiff ZIRBEL became eligible to draw a portion of her former spouse's retirement benefits, the value of which were calculated from the date of the marriage to the date of entry of the Qualified Domestic Relations Order.

12.    Because the Qualified Domestic Relations Order was entered on February 6, 2009, the Plan Administrator noted that benefits, calculated under the formula set forth above, would be payable beginning March of 2009.

13.    Sometime after March, in the year 2009, the Plan Administrator notified Plaintiff ZIRBEL that her monthly benefit as of March 2009 would amount to about $1,300.00 per month. Plaintiff ZIRBEL knew that this was not correct, and informed the Plan Administrator that this was an incorrect calculation.

14.    The initial calculation was incorrect, as the QDRO specified that Plaintiff ZIRBEL was entitled to receive fifty (50%) percent of her former

4

spouse's monthly benefit, and 65% after the death of her former spouse. Plaintiff ZIRBEL learned when she called the Plan Administrator that they had calculated the benefit at a different percentage. Plaintiff ZIRBEL was told by the Plan that her benefit was calculated at 43% for retroactive amounts, and 50% for post death monthly benefits. Subsequently, she was told that her benefits were calculated at 41% for retroactive amounts, and 50% for post death monthly benefits. Because Plaintiff ZIRBEL believed that all of these calculations were incorrect, she did not return the paperwork. Once again, communication stopped between Plaintiff ZIRBEL and the office of the Plan Administrator.

15.     In June of 2011, the monthly payments were recalculated by the Plan. Plaintiff ZIRBEL was then told that her monthly benefit as of March 2009 would be $1,870.67, and would be $2,928.55 per month after the participant's death. A copy of that communication is attached as **Exhibit "D"**. Again, communication between ZIRBEL and the Plan stopped for a time.

16.     In July of 2013, Plaintiff ZIRBEL received a communication from FORD, dated July 17, 2013. That letter confirmed that Plaintiff ZIRBEL was now being offered a lump sum payment representing her remaining benefit under the Qualified Domestic Relations Order. A copy of that communication is attached as **Exhibit "E"**.

17.     By letter dated July 26, 2013, Plaintiff ZIRBEL received a package from the Plan, concerning her right to elect either a monthly payment, or a lump sum payment in settlement of all benefit amounts she was entitled to. This Benefit Statement proposed to pay her a monthly benefit of $1,870.69 with no upward adjustment after her former spouse died. A copy of that package is attached as **Exhibit "F"**. Plaintiff ZIRBEL, being of the belief that the amounts were still wrong, since she was entitled to a survivor's benefit under the terms of the Qualified Domestic Relations Order, continued to try and contact Plan representatives to find out specifically how the benefits had been calculated. The package of July 26, 2013 had a deadline date of October 29, 2013, for return of the documents. That package also offered Plaintiff ZIRBEL the option of a one-time lump sum payment, which election would expire on October 29, 2013.

18.     On August 7, 2013, Plaintiff ZIRBEL spoke with someone from the Plan, and was told that, if she chose a lump sum payment, there would be no survivor benefits. It was further confirmed to her that, if she determined to take the monthly life benefit, there would be no post death adjustment.

19.     During this period of time, Plaintiff ZIRBEL was not receiving any monthly benefits at all, though the Plan Administrator was withholding monies each month from the pension payments they were sending to Plaintiff ZIRBEL's former spouse.

6

20.   On September 9, 2013, Plaintiff ZIRBEL had a conversation with Diana who was a representative of the Plan. Plaintiff ZIRBEL inquired as to the total of monies withheld by the Plan from 2009 to 2013, from benefits payable to Plaintiff ZIRBEL's former spouse. This time, Plaintiff ZIRBEL was told that she would not be receiving <u>any</u> benefits for the period 2009 – 2013. When Plaintiff ZIRBEL lost her temper and demanded to know why, and reminded Diana that her former husband's employer, FORD MOTOR COMPANY, had been taking money out of his pension checks, Diana continued to maintain that benefits for the period 2009 – 2013 were not available to her.

21.   Notwithstanding the information received from Diana, a few days later Plaintiff ZIRBEL received yet another Benefit Statement from the Plan, dated September 6, 2013. This communication acknowledged her entitlement to a benefit as of March 1, 2009, and calculated the benefit amount at $1,870.67 per month as of March 1, 2009, and $2,928.55 per month after the death of her former spouse. A copy of the Benefit Statement from that package is attached hereto, marked **Exhibit "G"**.

22.   Numerous calls and conversations then took place between Plaintiff ZIRBEL, her financial planner and the Plan Administrator, as the lump sum payment offer was pending at the same time that the latest monthly benefit package

offer was pending. As to the lump sum offer, there were two extensions obtained, while the Plan was asked to recalculate the amounts.

23.     Finally, in October of 2013, Plaintiff ZIRBEL received a telephone call telling her that the deadline was approaching, and she needed to make her choice. Plaintiff ZIRBEL made the decision to elect the lump sum payment, but, in accordance with her discussion with the Plan, indicated in the Acknowledgment Section on Page 16 that the calculations were wrong. Plaintiff ZIRBEL's election included a request for a recalculation, as she had been told that, if she did so, the benefit would be recalculated, and an extension given. The date accompanying her signature is October 25, 2013. A copy of that Election sheet is attached hereto, marked **Exhibit "H"**.

24.     Plaintiff ZIRBEL then received a telephone call from a woman named Carly informing her that the appeal date was up and the offer remained the same. Plaintiff ZIRBEL determined to accept the offer, since she had been told that a recalculation would be done, and she presumed that the recalculation resulted in no change.

25.     On October 29, 2013, Plaintiff ZIRBEL received a telephone call from a person named Debbie at Employee Services. Debbie confirmed the September 6, 2013, figures, and explained that the amount of money Plaintiff ZIRBEL would get when her former spouse passed away would not be figured into

8

the lump sum calculations because he had not yet passed away. Debbie also advised that Plaintiff ZIRBEL was no longer eligible for a lump sum offer, because "it was too late". When informed that Plaintiff ZIRBEL had previously asked for a recalculation, Debbie advised that she could request it, and indicated that, if requested, it would be recalculated and an extension given.

26.     Subsequently, under date of November 4, 2013, Plaintiff ZIRBEL received the same package again, asking her to provide the documentation without modification. She indicated she would elect the lump sum, and signed the document on November 17, 2013. The package included an Acknowledgement which stated that, inter alia, by signing the form, Plaintiff ZIRBEL certified as follows:

> "…If I am electing a lump sum benefit, I irrevocably waive the right to any future payments from the GRP for the benefit used to calculate this lump sum and acknowledge that the lump sum payment is a final and complete settlement of any amounts that may be payable to me with respect to this benefit under the GRP."

Below the above attestation and on the same page was another acknowledgment which said:

> "…I acknowledge that the lump sum payment is a final and complete settlement of any amounts that may be payable to me under the GRP."

A copy of the pertinent portions of this packet is attached hereto, marked **Exhibit "I"**.

27.    Plaintiff ZIRBEL received a check representing the actuarially equivalent value of her future benefit entitlement beginning December, 2013, as a lump sum. This check was in the amount of $271,081.50.  She also received a check which was to represent the back amounts owing to her from March 2009 to December 2013, in the amount of $351,689.72.

28.    Plaintiff ZIRBEL, believing that the pension issues were finally settled, began a gifting program to her grandchildren. She paid taxes on the taxable amount, performed maintenance and made reasonable improvements to her residence, gifted money to a few causes she supported, and will support herself for the remainder of her lifetime with the remainder of those funds.

29.    Forty one (41) months after she received the lump sum from the Plan, Plaintiff ZIRBEL received a notification from the Plan that she had been overpaid to the extent of $243,189.70. She was instructed to repay the specified amount within thirty (30) days, or be the subject of a collection action. A copy of the notification letter of May 24, 2017, is attached hereto, marked **Exhibit "J"**. Plaintiff ZIRBEL had received no communication from the Plan prior to May 24, 2017, which might call into question the propriety of the lump sum payment made to her.

30.    In accordance with the administrative procedural requirements set forth in Article XIII, Section 4(B), of the Plan, Plaintiff ZIRBEL appealed the

decision of the Plan Administrator under letter dated July 20, 2017. A copy of that Appeal Letter is attached hereto, marked **Exhibit "K"**.

31.     In accordance with the representation in her Appeal of July 20, 2017, and after retaining counsel, counsel timely submitted the necessary argument and documentation to support the Appeal. A copy of counsel's letter with attached documentation is attached hereto, marked **Exhibit "L"**.

32.     On August 23, 2017, the National Employees Service Center acknowledged receipt of the Appeal by letter. A copy of that letter is attached hereto, marked **Exhibit "M"**.

33.     By letter of October 26, 2017, The National Employees Service Center generated a "Claim Delay Letter", indicating that they required additional time to review the "relevant facts". A copy of that letter is attached hereto, marked **Exhibit "N"**.

34.     By letter of January 2, 2018, the National Employees Service Center denied Plaintiff ZIRBEL's Appeal, but indicated that she had the right to a further appeal to the General Retirement Plan Committee, if such Appeal was filed within sixty (60) days. A copy of that letter is attached hereto, marked **Exhibit "O"**.

35.     By letter of February 9, 2018, another Appeal was filed. A copy of the letter of Appeal is attached hereto, marked **Exhibit "P"**.

36.   By letter of May 7, 2018, The Plan's General Retirement Committee denied the Appeal. A copy of that letter is attached hereto, marked **Exhibit "Q"**.

37.   Plaintiff ZIRBEL has exhausted her administrative remedies.

38.   Pursuant to Article XIII, Section 4(D), an action involving benefits rider, the Plan must be brought within two (2) years after the date of the final denial. Accordingly, this action is timely.

39.   Article XIV, Section 2 of the Plan provided that, in the event of an overpayment of benefits, the "…amount of the overpayment shall be returned to the Retirement Fund, without limitation, <u>except the Committee shall have discretionary authority to reduce any repayment amount from a Member</u>." [Emphasis added.]

40.   Plaintiff ZIRBEL now faces an action for collection of $243,189.70 instituted by FORD, which may be filed at any time. Should such a collection action be instituted, Plaintiff ZIRBEL faces the loss of a major portion of the funds which must serve as her support for the remainder of her lifetime, along with all penalties and assessments which may be asserted against her under the law.

41.   Attached hereto, marked **Exhibit "R"**, is the Affidavit of Plaintiff DONNA JEAN ZIRBEL.

42.   Plaintiff ZIRBEL asserts that, under the facts of this case, the Plan is not entitled to recoupment of the amount it claims it improperly paid to Plaintiff

12

ZIRBEL, and should have reduced the repayment amount to "zero".

## COUNT I

### Declaratory Relief

43.    Plaintiff ZIRBEL incorporates by reference, as though full set forth herein, all of the Common Allegations.

44.    Defendant has informed Plaintiff ZIRBEL by virtue of language appearing on page 2 of its "Pension Benefit Adjustment Letter" that, if a payment in the amount of $243,189.70 is not made within thirty (30) days, it will take action against her.  That language states:

> "..Please return the amount indicted on the enclosed Payment Coupon as a lump sum within 30 days.  Failure to recover the overpayment amount will result in collection procedures and may result in the overpayment being referred to a collection agency."

45.    An actual controversy exists within this Court's jurisdiction, as the above language telegraphs Defendant's intention to take unilateral action to collect what Plaintiff ZIRBEL states Defendant is not entitled to under the circumstances.

46.    Because Defendant has announced its intentions, this dispute is ripe for decision by the Court.

47.    Plaintiff ZIRBEL states that this Court therefore has authority, pursuant to 28 U.S.C. § 2201, to declare the respective rights and obligations of the parties, and further states that, given the facts herein, Defendant is not entitled to

recoupment of monies it paid to Plaintiff ZIRBEL in discharge of its obligation under the terms of the Qualified Domestic Relations Order, and Plan provisions.

WHEREFORE, Plaintiff DONNA JEAN ZIRBEL requests that the Court declare that Defendant is not entitled to recoupment of monies paid to ZIRBEL as beneficiary under the terms of a Qualified Domestic Relations Order, and grant to Plaintiff any other such relief as is reasonable and just under the circumstances.

## COUNT II

### Arbitrary and Capricious Conduct

48.     Plaintiff ZIRBEL incorporates by reference, as though fully set forth herein, all of the Common Allegations, and all of the allegations in Count I.

49.     The Defendant, as Administrator of the Plan, had an obligation under the Employees Retirement Income Security Act not to conduct itself in an arbitrary and capricious manner with respect to application of the Plan provisions, and also had discretionary authority to adjust or erase any repayment amount mistakenly paid to a Member or a Member's beneficiary.

50.     Defendant's refusal to release Plaintiff ZIRBEL from any obligation for repayment was  arbitrary and capricious in the following respects:

A.     Defendant's incorrect calculations were communicated to them by Plaintiff ZIRBEL, resulting in several recalculations of benefits, with

14

differing results on at least two occasions, and more if telephone representations are taken into account;

B.   Defendant's notification to Plaintiff ZIRBEL in October of 2013 reasonably led her to believe that the final recalculation done by Defendant at Plaintiff ZIRBEL's request was, as far as Defendant was concerned, correct, and would not be recalculated again;

C.   Defendant's records consistently, without exception, reflected an eligibility date of March 2009, not 1998;

D.   Defendant's Benefit Package of October 2013, resent to her in November of 2013, required Plaintiff ZIRBEL to certify twice her understanding that this payment would be "…a final and complete settlement of any amounts due her…" under the Plan.

E.   Defendant was informed by Plaintiff ZIRBEL via the Appeals that were filed of her financial circumstances, including the fact that Plaintiff ZIRBEL had no regular income other than a portion of her former spouse's social security, which should have made it clear to Defendant that Plaintiff ZIRBEL could not afford to pay back the money she had received some forty one (41) months earlier, and which should have triggered a decision by Defendant under its discretionary powers to forgive the overpayment;

F.   The actions of the Defendant, both the Administrator and the

15

sponsor of the Plan, in forcing Plaintiff ZIRBEL to accept its calculations, then insisting that she agree to the finality of those calculations, then informing her 41 months later that their final calculations were wrong and Plaintiff ZIRBEL should send them a check for more than 69% of her benefit constituted arbitrary and capricious conduct on the part of the Defendant, as Plan Administrator and Plan Sponsor;

   G. The communications by counsel of August 9, 2017, illustrated to Defendant the material change of position Plaintiff ZIRBEL had taken in reliance upon this "final and complete settlement" and the hardship that would result if Plaintiff ZIRBEL were forced to return the funds she had been paid.

51. The decision of Defendant, not supported by substantial evidence, was unjustified under that portion of the Plan provisions which vested in the Plan discretion to adjust or forgive altogether an overpayment of benefits in a situation such as this; the decision was an abuse of that discretion.

52. As a direct and proximate result of the arbitrary and capricious actions of Defendant FORD, Plaintiff ZIRBEL:

   A. Has been forced to adjust her finances to preserve the dollars she has left;

B.    Has been forced to suspend her gift giving program to her grandchildren;

C.    Lives with the possibility that she will not have enough funds remaining to support herself for the remainder of her lifetime;

D.    Has no ability to replace what Defendant demands she pay back, having retired years ago;

E.    Has no retirement from her former employment to fall back on;

F.    As her Affidavit indicated, Plaintiff conducted a reasonable, thoughtful inquiry, in conjunction with her advisors, as to whether she should even accept a lump sum payment from the Plan; ultimately, she only did so because of the continued inability to get consistent, reliable answers from representative of the Plan;

G.    Has suffered other and further damage not yet determined.

WHEREFORE, Plaintiff DONNA JEAN ZIRBEL requests judgment in her favor, specifically requesting this Court declare that Defendant is not entitled under the circumstances herein to demand recoupment from Plaintiff of amounts it says were overpaid to her in December of 2013, as well as her costs and attorney fees wrongfully incurred.

## COUNT III

### Laches

53.     Plaintiff ZIRBEL incorporates by reference, as though fully set forth herein, all of the Common Allegations and all of the allegations in Counts I and II.

54.     As the Plan fiduciary, Defendant's responsibilities are dictated in part by principles developed in the evolution of the law of trusts.

55.     Included within the law applicable to trust fiduciaries is the equitable principle of laches, which Plaintiff ZIRBEL states is applicable to the facts herein.

56.     The failure of Defendant to conduct an audit for more than three (3) years after calculating Plaintiff ZIRBEL's lump sum payment for that period of eligibility beginning in March of 2009 is unreasonable and inexcusable, given the reliance Defendant knew Plaintiff ZIRBEL would place upon the funds received.

57.     In reliance upon the certainty that what she received was correct, Plaintiff ZIRBEL materially changed her position, in the following manner:

A.     She paid federal taxes of some $66,500.00 on the sum received, and is past the period within which she could amend her 2013 federal tax return;

B.     She paid state income taxes to the Commonwealth of Massachusetts, and is past the period within which she could amend her 2013 state tax return;

C.     She initiated a gift giving program to her children and grandchildren;

D.     She established 529 accounts for her grandchildren;

E.     She made reasonable improvements in her home;

F.     She established a program to use the money over her lifetime, to insure her support;

G.     she made other material changes to her position not yet determined.

58.     The actions taken by Plaintiff ZIRBEL, as set forth above, in reliance upon Defendant's representations, render it impossible for her to be restored to her former circumstances, thereby significantly prejudicing Plaintiff ZIRBEL.

59.     Defendant, and Defendant alone, was aware of the facts and the provisions of the Plan applicable to its calculation of the amount to be paid to ZIRBEL, and made it clear to ZIRBEL that its latest calculation of the lump sum amount to be paid to her would not be changed, and she was to take it or leave it.

60.     Under the circumstances, Plaintiff ZIRBEL submits that Defendant is barred from recoupment of the alleged overpayment.

WHEREFORE, Plaintiff DONNA JEAN ZIRBEL requests judgment in her favor, specifically requesting this Court declare that Defendant is not entitled under the circumstances herein to demand recoupment from Plaintiff of amounts it claims

19

were overpaid to her in December of 2013, as well as her costs and attorney fees wrongfully incurred.

## COUNT IV

### Estoppel

61.    Plaintiff ZIRBEL incorporates by reference, as though fully set forth herein, all of the Common Allegations and all of the allegations in Counts I, II and III.

62.    The conduct of Defendant herein, as Administrator of the Plan, included:

A.    Numerous Retirement Benefit Statements acknowledging that her Benefit Commencement Date would be March 1, 2009;

B.    Numerous recalculations of her benefit, most of which calculated her retroactive benefit at the same amount, or within a couple of pennies' difference, based upon an eligibility date of March 2009;

C.    Consistent affirmations to her by representatives of the Plan that her eligibility date was March of 2009;

D.    An acknowledgment that, after the last recalculation was done, the result would not be changed, thus confirming again her eligibility date of March 2009;

E.    Confirmation by several representatives of the Plan to both

20

Plaintiff ZIRBEL and her financial advisor by conference phone that the percentages used to calculate her remaining benefit were correct, and were the same figures used to calculate the lump sum payment of remaining benefits;

F.    A requirement (twice) that Plaintiff ZIRBEL agree in writing that acceptance of the lump sum represented a "final and complete settlement of any amounts that may be payable to me under the GRP".

63.    The statements made by Defendant, through its administrators and representatives were relied upon by Plaintiff ZIRBEL in making the decision to accept the lump sum payment, representing the remaining amounts owed to her. Indeed, had Plaintiff ZIRBEL been told that, if Defendant would ever again recalculate amounts owed to her retroactively, and would have the right to demand that it all be paid back if the calculation were incorrect, Plaintiff ZIRBEL would never have accepted a lump sum benefit, but would have taken monthly benefit payments instead, which could not be spent until received.

64.    Defendant FORD MOTOR COMPANY, as Administrator of the FORD MOTOR COMPANY GENERAL RETIREMENT PLAN, was the entity with sole knowledge of the facts, as Defendant was the only one in possession of all of the data and records from which to calculate the benefits to be paid to a former spouse under a Qualified Domestic Relations Order.

65.     As a result of the egregious nature of the statements made and the actions taken by Defendant, Defendant is estopped from demanding that Plaintiff ZIRBEL reimburse to the Plan the money it calculated was owed to her, and which was paid to her in a lump sum benefit.

WHEREFORE, Plaintiff DONNA JEAN ZIRBEL requests judgment in her favor, specifically requesting this Court to declare that Defendant FORD MOTOR COMPANY, as Plan Administrator of the FORD MOTOR COMPANY GENERAL RETIREMENT PLAN is not entitled under the circumstances herein to demand recoupment from Plaintiff of amounts it says were overpaid to her in December of 2013, as well as her costs and attorney fees wrongfully incurred.

## COUNT V

### Attorney Fees

66.     Plaintiff ZIRBEL incorporates by reference, as though fully set forth herein, all of the Common Allegations and all of the allegations in Counts I, II, III and IV.

67.     29 U.S.C. § 1132(g)(1) provides that this Court may award all or a portion of the costs and expenses incurred in connection with an action to enforce an individual's rights under ERISA, including reasonable attorney fees, to the prevailing party.

68.   If this Court agrees that Defendant is not entitled to recoupment of monies it claims it mistakenly made to Plaintiff ZIRBEL, then Plaintiff ZIRBEL requests that the Court exercise its discretion, and award to Plaintiff ZIRBEL her costs and attorney fees incurred.

WHEREFORE, Plaintiff DONNA JEAN ZIRBEL requests that this Court award her costs and attorney fees, if the Court agrees Defendant should not recoup what it paid her, and further, grant to Plaintiff such other and further relief as is appropriate and in good conscience.

Respectfully Submitted,

WOOD KULL HERSCHFUS OBEE & KULL PC

 /s/Katherine Wainright Shensky
Katherine Wainright Shensky (P33391)
Attorneys for Plaintiff
37000 Grand River Avenue, Suite 290
Farmington Hills, Michigan 48335-2881
(248) 476-2000
kws@woodkull.com

Dated: October 15, 2018