UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DONNA JEAN ZIRBEL,

    Plaintiff/Counter-Defendant,                      Case No. 18-13212

v.                                                                     Honorable Nancy G. Edmunds

FORD MOTOR COMPANY, as Sponsor and
Plan Administrator for the FORD MOTOR
COMPANY GENERAL RETIREMENT PLAN,

    Defendant/Counter-Plaintiff.

_____/

**OPINION AND ORDER DENYING PLAINTIFF'S MOTION FOR JUDGMENT TO REVERSE THE DECISION OF THE PLAN ADMINSTRATOR AND FOR SUMMARY JUDGMENT ON DEFENDANT'S COUNTERCLAIMS [25] AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ON PLAINTIFF'S CLAIMS AND ITS COUNTERCLAIMS [26]**

Plaintiff Donna Jean Zirbel ("Plaintiff") was undisputedly overpaid $243,189.70 in benefits by the Ford Motor Company General Retirement Plan ("the plan"), which is administered by Defendant Ford Motor Company ("Defendant"). She brings this action pursuant to the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1132(a)(1)(B), in an attempt to avoid repayment of that amount. Defendant has filed a countersuit under 29 U.S.C. § 1132(a)(3), seeking recoupment of the overpaid benefits. The matter is currently before the Court on Plaintiff's motion for judgment to reverse the decision of the plan administrator and for summary judgment on Defendant's counterclaims, (dkts. 25, 31), and Defendant's cross-motion for summary judgment on Plaintiff's claims and its counterclaims, (dkts. 26, 27, 28). Both parties filed response and reply briefs to the opposing party's motion. (*See* dkts. 32, 33, 34, 35, 36.) The

1

Court held a hearing on the motions on December 11, 2019. For the reasons set forth below, the Court DENIES Plaintiff's motion and GRANTS Defendant's motion.

## I. Background[1]

Plaintiff is seventy-five years old and is currently single and living alone. She was married for thirty-nine years to Carl Zirbel ("Zirbel"), a former employee of Defendant's and a participant in the plan. Plaintiff and Zirbel were divorced in January 2009. (Dkt. 25-5.) A qualified domestic relations order for the plan was entered on February 6, 2009. (Dkt. 25-4.) Pursuant to the order, Plaintiff was to receive fifty percent of the marital portion of Zirbel's total benefits both prior to and after his death. (*Id.* at PgID 931-32.) Plaintiff testified that she believed she would receive fifty percent of the marital portion of Zirbel's benefits during his lifetime and sixty-five percent of those benefits after his death. (*See* dkt. 25-3, PgID 855-56.)

According to Plaintiff's testimony, in March 2009, she contacted Defendant about the benefits she was entitled to receive. (*Id.* at PgID 854.) She was told that her benefit would be about $1,300.00 per month. (I*d.* at PgID 855.) Plaintiff told Defendant that the number was incorrect, but let it go for the time being.

In May 2011, Plaintiff contacted Defendant again by calling the National Employee Service Center ("NESC"), which was operated by a third-party administrator, Conduent, about commencing her monthly benefits. (*Id.*) NESC sent Plaintiff a retirement benefit statement, stating her monthly benefits would be in the amount of

---

[1] The parties go into much detail regarding the factual background of this case, disagreeing over some of the details. The Court, however, will recite the facts only to the extent necessary to give context to the parties' arguments and apply the law to their claims. Moreover, as will be discussed more fully below, the Count finds there is no genuine dispute over any material fact.

2

$1,870.67 per month during Zirbel's lifetime and $2,928.55 per month after his death. (*See* dkt. 25-7.) She did not apply to commence benefits at the time.

On July 26, 2013, Plaintiff was sent an offer from Defendant pursuant to a "lump sum project" being handled by an actuarial firm Defendant contracted with named Towers Watson. Plaintiff was told she could take a lump sum in the amount of $271,081.50 in place of the future monthly benefit she was entitled to receive as of December 1, 2013. (*See* dkt. 25-8.) In the same offer, Plaintiff was informed that she would also receive a one-time payment of $351,689.72 for retroactive monthly benefit payments that she should been receiving up through December 1, 2013. These lump sum payments were calculated based upon a $1,870.69 monthly payment.

In August of 2013, Plaintiff hired a new financial advisor named Laura Peeke. Peeke recorded her communications with Plaintiff regarding her benefits and also participated in six conference calls between Plaintiff and Defendant. (*See* dkt. 25-11, PgID 1080.) Peeke testified that Defendant gave Plaintiff "confusing and contradicting information" and described the way it handled Plaintiff's inquiries as "extremely poor." (*Id.* at PgId 1141.) Plaintiff alleges that the uncertainty and conflicting information she received from Defendant resulted in a negative impact on her health.

On September 6, 2013, another packet was sent to Plaintiff. This packet was sent from the NESC, and included the same monthly benefit amounts that were in the original statement sent to Plaintiff in 2011. (*See* dkt. 25-14.) During a conference call with Defendant on September 27, 2013, Plaintiff was reassured that the lump sum payments were correct. Plaintiff received a final packet regarding the lump sum

3

payments on November 4, 2013, (dkt. 25-25), and the two checks came in the mail on December 23, 2013, (dkt. 25-28).

In June of 2017, Plaintiff received a letter demanding the return of $243,189.70 within thirty days. (Dkt. 25-30.) The lump sum payment of $351,689.72 was done using an incorrect benefit commencement date of February 1998 (the month Zirbel retired), rather than the correct benefit commencement date of March 1, 2009. After receiving this letter, Plaintiff retained counsel and filed an appeal. The first appeal was denied by a letter dated December 26, 2017 from NESC. (Dkt. 25-32.) That letter informed Plaintiff she could then file an appeal to the plan committee. After filing her second appeal, that appeal was denied by the plan committee in a letter dated May 7, 2018. (Dkt. 25-35.) That letter indicated that Plaintiff could apply for a hardship reduction. Rather than do so, Plaintiff brought the present lawsuit.

Plaintiff indicates that at the time of distribution, $35,000 was withheld from the payments for federal taxes and $18,600 was withheld for state taxes. (Dkt. 25-29, PgID 1227.) She also set aside $71,400 to cover additional taxes. She gifted approximately $80,000 to her children, grandchildren, and son-in-law and made a number of donations. She also placed money in her IRAs, savings account, and her investment accounts. Plaintiff also notes that she has used the money to update her residence and pay her attorney fees. Defendant argues that while Plaintiff has "unloaded" as much of the money as possible, her retirement funds have remained in excess of $1.5 million and thus she can afford to repay the plan the overpaid benefits. (*See* dkt. 26, PgID 1309; dkt. 25-11, PgID 1129.)

**II. Analysis**

Plaintiff argues that the plan committee should have exercised its discretion to reduce the repayment amount she owes. She argues that the plan's failure to do so was arbitrary and capricious or, alternatively, that Defendant should be estopped from seeking recoupment based on principles of equitable estoppel.[2] Defendant argues that Plaintiff's claims fail and seeks a judgment in the amount of the overpaid benefits pursuant to the plan or, alternatively, based upon a theory of unjust enrichment.

The Court begins its analysis with the applicable standards of review, and then addresses the parties' claims.

**A. Legal Standards**

A de novo standard of review applies to decisions by ERISA plan administrators "unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989). Where an ERISA benefit plan gives the plan administrator discretionary authority, the administrator's decision is reviewed under the deferential "arbitrary and capricious" standard. *Marquette Gen. Hosp. v. Goodman Forest Indus.*, 315 F.3d 629, 632 (6th Cir. 2003) (citing *University Hosps. of Cleveland v. Emerson Elec. Co.*, 202 F.3d 839, 845 (6th Cir. 2000)). Under the arbitrary and capricious standard, a court should uphold the administrator's decision as long as it is rational in light of a plan's provisions. *Id.* Under either standard, the Court's review of

---

[2] Plaintiff also brought a claim of laches in her complaint, but indicates in her motion that she has withdrawn that claim because discovery has revealed that Defendant was unaware of the error that led to the overpayment until April of 2017. (*See* dkt. 25-1, PgID 821.) Plaintiff also argues that if she prevails in this action, she is entitled to an award of attorney fees.

a plan's decision is generally limited to the contents of the administrative record. *See Wilkins v. Baptist Healthcare Sys., Inc.*, 150 F.3d 609, 616 (6th Cir. 1998).

Here, the applicable plan provision states that "[i]n the event of an error that results in an overpayment of benefits to a Member, the amount of the overpayment shall be returned to the Retirement Fund, without limitation, except the Committee shall have discretionary authority to reduce any repayment amount from a Member." (*See* dkt. 1-2, PgID 145.) The plan also states that the plan administrator has the "discretionary authority to administer the benefit structure of the Plan, and to this end may construe and interpret the Plan." (*Id.* at PgID 140.) Thus, the arbitrary and capricious standard of review should apply. Indeed, Plaintiff asserted in both her complaint and motion that the plan's failure to exercise its discretion to reduce the repayment amount she owes was arbitrary and capricious. In her response to Defendant's motion for summary judgment, however, she argues that because Defendant delegated its duties to a third-party, Conduent, the plan's decision should be reviewed de novo. In support of this position, she cites to *Bumgarner v. Ford Motor Gen. Ret. Plan*, No. 1:14-cv-788, 2016 U.S. Dist. LEXIS 95949 (S.D. Ohio Apr. 12, 2016), *adopted by* 2016 U.S. Dist. LEXIS 95941 (S.D. Ohio July 22, 2106). There, the magistrate judge found that because a third-party that was not authorized to exercise fiduciary discretion made the decision to deny the plaintiff's claim, a de novo standard of review should apply. *See id.* at \*21-25, 54; *see also Shelby Cty. Health Care Corp. v. Majestic Star Casino, LLC Grp. Health Benefit Plan*, 581 F.3d 355, 365 (6th Cir. 2009) ("Where a plan administrator does not make the benefits decision, the plan administrator has not exercised its discretionary authority, and therefore a deferential standard of review is not justified."). The

6

magistrate judge in *Bumgarner* recommended, however, the claim decision be reversed even under the more deferential arbitrary and capricious standard.  2016 U.S. Dist. LEXIS 95949, at *54*.

Here, the record shows that while Conduent sent Plaintiff the letter informing her of the error in the calculation of her benefits as well as the letter denying her first appeal, Plaintiff was informed that she could appeal that decision to the plan committee.  (*See* dkt. 25-32.)  After Plaintiff filed her second appeal, the committee met and conducted its own review before issuing the final denial letter that is on appeal here.  (*See* dkt. 25-35.)  Because the plan committee itself is the entity that refused to exercise its discretionary authority to reduce the repayment amount, an arbitrary and capricious standard of review applies.  *Cf. Shelby Cty. Health Care Corp.*, 581 F.3d at 365-66 (upholding the district court's decision to apply a de novo standard of review after it found that the third-party administrator had made the decision to deny the benefits and the plan committee "simply adopted its decision without engaging in any independent fact-finding").

Plaintiff's equitable estoppel claim is not subject to arbitrary and capricious review and is instead governed by Federal Rule of Civil Procedure 56.  *See, e.g.*, *Trombly v. Fid. Workplace Servs. LLC*, No. 11-13477, 2013 U.S. Dist. LEXIS 32410, at *22 (E.D. Mich. Mar. 7, 2013*)* (applying Rule 56 standards to an ERISA equitable estoppel claim); *see also Moore v. Lafayette Life Ins. Co.*, 458 F.3d 416, 427 (6th Cir. 2006) (noting that because claims for breaches of fiduciary duty and promissory estoppel are "addressed in the first instance in the district court," they "requir[e] no deference to any administrator's action or decision").  Rule 56 standards also apply to

Defendant's counterclaim for the reimbursement of the overpayment of benefits.  *See, e.g., Longuski v. Iron Workers' Local No. 25 Pension Plan*, No. 11-11595, 2012 U.S. Dist. LEXIS 52177, at *3 (E.D. Mich. Apr. 13, 2012) (applying Rule 56 standards to a plan's motion for summary judgment on its counterclaim for reimbursement of overpayment of benefits).

Under Rule 56, summary judgment is appropriate if "'the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *United States S.E.C. v. Sierra Brokerage Servs., Inc.*, 712 F.3d 321, 326-27 (6th Cir. 2013) (quoting Fed. R. Civ. P. 56(a)).  When reviewing the record, "'the court must view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in its favor.'" *Id.* at 327 (quoting *Tysinger v. Police Dep't of Zanesville*, 463 F.3d 569, 572 (6th Cir. 2006)).  Furthermore, the "'substantive law will identify which facts are material,' and 'summary judgment will not lie if the dispute about a material fact is genuine, that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Id.* at 327 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  When considering the material facts on the record, a court must bear in mind that "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff."  *Anderson*, 477 U.S. at 252.

### B.    The Plan's Decision Was Not Arbitrary and Capricious.

Plaintiff argues that because this is a recoupment case, the Court should consider the principles of equity set forth in *Wells v. United States Steel & Carnegie*

8

*Pension Fund, Inc.*, 950 F.2d 1244 (6th Cir. 1991), when deciding whether the plan's decision was arbitrary and capricious. Defendant argues that equitable principles are irrelevant to Plaintiff's claim. Defendant further argues that the plan committee's decision to demand repayment of the overpaid benefits was not only rational in light of the plan's provisions but also consistent with its "'duty to all beneficiaries to preserve limited plan assets.'" (*See* dkt. 32, PgID 1903 (quoting *Conkright v. Frommert*, 559 U.S. 506, 520 (2010)).)

In *Wells*, the Sixth Circuit clearly set forth that it "may not overrule the Fund's interpretation of the Plan language unless the administrator's reading may be said to be arbitrary and capricious. That standard of review asks whether the Fund's interpretation of the Plan language is 'reasonable.'" 950 F.2d at 1249. The court found the plan's interpretation in that case unreasonable and reversed the district court's finding to the contrary. *Id.* The court then went on to consider the plan's counterclaim for recoupment of overpayments, and only within that context did it instruct the district court to consider the equitable factors Plaintiff points to.[3] *See id.* at 1251.

Thus, to the extent the equitable factors set forth in *Wells* are relevant in this case, they relate to Defendant's counterclaim, which is discussed below, while review of whether the plan's decision was arbitrary and capricious turns on the language of the plan. *Compare Longuski v. Iron Workers' Local No. 25 Pension Plan*, No. 11-11595,

---

[3] The Sixth Circuit stated that the district court may wish to consider the following factors when deciding whether repayment would be inequitable: "the beneficiary's disposition of the money which he was overpaid, the amount of the overpayment, the nature of the mistake made by the administrator, the amount of time which has passed since the overpayment was made, and the beneficiary's total amount of income and the effect recoupment would have on that income." *Wells*, 950 F.2d at 1251 n.3.

9

2011 U.S. Dist. LEXIS 141713, at *24 (E.D. Mich. Dec. 9, 2011) (upholding the plan's decision because it was based upon a straightforward interpretation of the plan's provisions) *with Longuski*, 2012 U.S. Dist. LEXIS 52177, at *12-15 (considering the equitable factors set forth in *Wells* in the context of the plan's counterclaim for recoupment of benefits). The Court finds that because the plan clearly sets forth that a beneficiary shall return the amount of any overpayment of benefits and the amount Plaintiff was overpaid is not in dispute, the plan committee's refusal to reduce that amount was reasonable. In sum, the plan's decision was not arbitrary and capricious, and Defendant is entitled to judgment on Plaintiff's claim seeking review of the plan's decision.

**C.    Plaintiff's Equitable Estoppel Claim Fails.**

Plaintiff argues Defendant should be estopped from seeking repayment of the overpaid benefits based on a theory of equitable estoppel. Defendant argues that even if such a claim is available to Plaintiff, she cannot establish her claim as a matter of law.

The traditional elements of equitable estoppel are:

> 1) conduct or language amounting to a representation of material fact; 2) awareness of the true facts by the party to be estopped; 3) an intention on the part of the party to be estopped that the representation be acted on, or conduct toward the party asserting the estoppel such that the latter has a right to believe that the former's conduct is so intended; 4) unawareness of the true facts by the party asserting the estoppel; and 5) detrimental and justifiable reliance by the party asserting estoppel on the representation.

*Bloemker v. Laborers' Local 265 Pension Fund*, 605 F.3d 436, 442 (6th Cir. 2010) (citing *Armistead v. Vernitron Corp.*, 944 F.2d 1287, 1298 (6th Cir. 1991)). However, if a plaintiff attempts to invoke equitable estoppel in the case of unambiguous pension plan provisions, he or she must

10

demonstrate the traditional elements of estoppel, including that the defendant engaged in intended deception or such gross negligence as to amount to constructive fraud, plus (1) a written representation; (2) plan provisions which, although unambiguous, did not allow for individual calculation of benefits; and (3) extraordinary circumstances in which the balance of equities strongly favors the application of estoppel.

*Id.* at 444. This is a "narrow exception" to the general rule that estoppel can only be invoked in the context of ambiguous plan provisions.[4] *Donati v. Ford Motor Co.*, 821 F.3d 667, 674-75 (6th Cir. 2016).

In *Bloemker*, 605 F.3d at 439, the plan participant was told that he would receive $2,339.47 per month for the rest of his life if he retired early. After he retired early based on the information he was given and received benefits for nearly two years, he was informed that his benefits were miscalculated and that he was only entitled to $1,829.71 per month. *Id.* He thus faced a significant decrease in his pension income, as well as a demand for repayment of $11,215.16. *Id.* The Sixth Circuit found that the plaintiff had alleged all of the traditional elements of equitable estoppel, along with the three additional requirements set forth above and, thus, reversed the dismissal of his estoppel claim. *Id.* at 442-44.

The Court finds that this case does not involve the type of extraordinary circumstances contemplated by the Sixth Circuit in *Bloemker*. While the amount Plaintiff faces repaying is much larger than the amount of repayment in that case, the miscalculation here did not induce Plaintiff to make a life-altering decision that she

---

[4] To the extent Plaintiff argues that the plan provision at issue is ambiguous, the Court disagrees. The plan clearly states that "[i]n the event of an error that results in an overpayment of benefits to a member, the amount of overpayment shall be returned to the Retirement Fund, without limitation." (*See* dkt. 1-2, PgID 145.) The fact that the plan committee is given discretionary authority to reduce the amount of any overpayment does not render this provision ambiguous.

11

would not have otherwise made, such as the decision to retire early made by the plaintiff in *Bloemker*. *See Donati*, 821 F.3d at 675 (finding the *Bloemker* exception inapplicable because the "miscalculation of benefits did not detrimentally induce the beneficiary to make a decision that she would not have otherwise made" and the option to cash out her benefits "would have been attractive regardless of whether the correct sum was $38,840.34 or $230,361.49"). Nor does Plaintiff's reliance on Defendant's misinformation and the time she spent on the correspondence with Defendant's representatives constitute extraordinary circumstances. *See id.* And even if Plaintiff could establish the additional requirements set forth in *Bloemker*, the record does not support a finding that Defendant "engaged in intended deception or such gross negligence as to amount to constructive fraud," *see Bloemker*, 605 F.3d at 444, given that Plaintiff concedes Defendant was unaware of the error that led to the overpayment until April of 2017,[5] (*see* dkt. 25-1, PgID 821). Thus, the Court denies Plaintiff's motion for summary judgment on her equitable estoppel claim and grants Defendant's motion on this claim.[6]

### D. Defendant is Entitled to Restitution.

---

[5] The parties disagree over whether Plaintiff was aware of the true facts. More specifically, Defendant asserts that Plaintiff knew all along she was receiving too much money, while Plaintiff responds by arguing she thought the monthly payment was incorrect but did not know that an incorrect date was being used. The Court notes that even if Plaintiff was completely unaware that there was any error, this would not alter its disposition of the parties' claims.

[6] Because the Court enters judgment in favor of Defendant on Plaintiff's claims, Plaintiff has not achieved any "degree of success on the merits" and is not entitled to an award of attorney fees. *See Hardt v. Reliance Standard Life Ins. Co.*, 560 U.S. 242, 245 (2010). Moreover, because Plaintiff's substantive claims fail, she is not entitled to declaratory relief.

Defendant seeks restitution of the overpaid benefits. Plaintiff argues that Defendant is not entitled to the form of relief it seeks pursuant to the relevant plan provisions.

Under ERISA § 502(a)(3), a plan fiduciary has the right to seek "appropriate equitable relief" to "enforce provisions" of the plan. 29 U.S.C. § 1132(a)(3). Thus, to invoke the authority to sue under this statutory provision, a fiduciary must be seeking a category of relief that is equitable in nature and not simply an award of compensatory damages. *See Mertens v. Hewitt Assocs.*, 508 U.S. 248, 255-56 (1993). In *Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 212 (2002), the Supreme Court explained that "not all relief falling under the rubric of restitution is available in equity." There, the fiduciary sought reimbursement for payment of medical expenses through a lien against any settlement with third-party tortfeasors, but the Supreme Court held that equitable restitution was unavailable in that case because the funds sought were not in the beneficiaries' possession. *Id.* at 214. In another case, however, the Supreme Court allowed a fiduciary to seek reimbursement of medical expenses paid by the plan after the beneficiary recovered for its injuries from a third party, because the plan explicitly provided for the reimbursement of such benefits. *See Sereboff v. Mid Atl. Med. Servs.*, 547 U.S. 356, 365-68 (2006). The court reasoned that the remedy sought qualified as an equitable remedy "because it is indistinguishable from an action to enforce an equitable lien established by agreement," and that, in such cases, strict tracing of funds is not required. *Id.*

In a later case, the Sixth Circuit considered whether *Great-West* and *Sereboff* barred the recovery of overpayments due to the beneficiary's receipt of Social Security

13

disability benefits. *See Gilchrest v. UNUM Life Ins. Co. of Am.*, 255 F. App'x 38, 44-46 (6th Cir. 2007) (unpublished). There, the applicable plan provision stated that the plan had

> the right to recovery any overpayments due to: fraud; any error [the plan] makes in processing a claim; and your receipt of deductible sources of income. You must reimburse us in full. We will determine the method by which the repayment is to be made. [The plan] will not recover more money than the amount we paid you.

*Id.* at 45. The court noted that "[a]t first blush" this plan provision did not seem to satisfy the requirements of *Sereboff* because there was no express lien against a specifically identified fund. *Id.* However, the court reasoned that because the plan sought to recover overpayments, the plan provision "asserts a right to recover from a specific fund distinct from [the beneficiary's] general assets—the fund being the overpayments themselves—and a particular share of that fund to which the plan was entitled—all overpayments due to the receipt of Social Security benefits, but not to exceed the amount of benefits paid." *Id.* at 45-46. In *Hall v. Liberty Life Assurance Co. of Boston*, 595 F.3d 270, 274 (6th Cir. 2010), the Sixth Circuit reaffirmed its holding in *Gilchrest* and similarly held that the plan was entitled to reimbursement for the overpayments it made due to the beneficiary's retroactive receipt of Social Security benefits.

Here, the plan states that "in the event of an error that results in an overpayment of benefits to a member, the amount of overpayment shall be returned to the Retirement Fund," (*see* dkt. 1-2, PgID 145), and thus there is a plan provision that provides a right to recover from a specific fund, "the fund being the overpayments themselves." *See Gilchrest*, 255 F. App'x at 45-46; *see also Shumpert v. GM Life & Disability Benefits Program for Hourly Employees*, No. 2:12-cv-14786, 2014 U.S. Dist. LEXIS 158486, at

14

*6 (E.D. Mich. Nov. 10, 2014) (noting "[t]he Sixth Circuit has consistently held that plan fiduciaries may recover overpaid benefits when the terms of an ERISA plan so permit"). Moreover, the plan provision sets forth that the plan has a right to recover "the amount of overpayment," and therefore limits recovery to "the amount of benefits paid."[7] *See Gilchrest*, 255 F. App'x at 45-46; *see also Smithson v. Aetna Life Ins. Co.*, No. 13-360-DCR, 2014 U.S. Dist. LEXIS 11207, at *9-10 (E.D. Ky. Jan. 30, 2014). Thus, Defendant is entitled to restitution in the amount of the overpaid benefits.

A consideration of the equitable factors set forth in *Wells*, 950 F.2d at 1251 n.3, does not compel a different result. Plaintiff has significant retirement assets and can afford to repay the plan. *Cf. Longuski*, 2012 U.S. Dist. LEXIS 52177, at *14-15 (finding that it would be inequitable to require plaintiff to reimburse the plan because the plaintiff used the benefits he received to pay for the necessities of living during a period of ten years and could not afford to repay the amount of overpayment). The Court, therefore, denies Plaintiff's motion for summary judgment on Defendant's counterclaim for restitution and grants Defendant's motion for summary judgment on this claim.[8]

### III.     Conclusion

For the reasons set forth above, the Court DENIES Plaintiff's motion and GRANTS Defendant's motion. Accordingly, Defendant is entitled to a judgment in the amount of $243,189.70.

---

[7] To the extent Plaintiff argues that the word "amount" in the plan provision is fatal to Defendant's position that it seeks equitable, rather than legal, relief, the Court disagrees.

[8] Because the Court finds that Defendant is entitled to restitution pursuant to the terms of the plan, there is no need to address Defendant's unjust enrichment claim.

15

SO ORDERED.

                                              <u>s/Nancy G. Edmunds</u>
                                              Nancy G. Edmunds
                                              United States District Judge

Dated: January 29, 2020

I hereby certify that a copy of the foregoing document was served upon counsel of record on January 29, 2020, by electronic and/or ordinary mail.

                                              <u>s/Lisa Bartlett</u>
                                              Case Manager